ROBERTSON, Justice:
The appellant, Norman Pollard, was indicted, tried and convicted in the Circuit Court of Lee County, of the crime of false pretense (giving a bad check), and was sentenced to serve a term of three years in the State Penitentiary and to pay a fine of $250.00.
The appellant assigned as error: the granting of State’s Instruction No. 1; the refusal to direct a verdict for the defendant; and permitting the state to go into collateral matters and to impeach the appellant on the collateral issue of whether he had done business on a hold-check basis with other used car dealers.
Appellant had a sideline of buying used cars, repairing and improving them, and then selling them at a profit. He was a young married man with no capital and operated on a shoestring. He had been doing business for some months with Ronald Michael and Charles Baxter, of B & M Motors, Inc., Baldwyn, Mississippi.
On September 5, 1968, Pollard gave B & M Motors a $2,550.00 check for three used cars. September 5th was on Thursday, and Pollard testified that he asked Ronald Michael to hold the check until the following week. The proof showed that the check was held until the following Tuesday, September 10th, when it was deposited to the account of B & M Motors. Michael explained that B & M Motors was charged a flat exchange fee of $5.00 whether he deposited $1,000.00 or $50,000.00, so he usually waited until after the auction sale on Monday to make his deposit. The $2,550.00 check of Pollard was returned because of insufficient funds.
At the November, 1968, term of Circuit Court, Pollard was indicted for the crime of false pretense, (the giving of a bad check for $2,550.00 and receiving value for the check in the form of three used cars). The one indispensable element of this offense is the receiving of value for the check at the very time it is delivered. In other words, the seller parts with something of value on the belief that the check is good at that particular time. Kitchens v. Barlow, 250 Miss. 121, 164 So.2d 745 (1964); Broadus v. State, 205 Miss. 147, 38 So.2d 692 (1949); Grenada Coca Cola Co. v. Davis, 168 Miss. 826, 151 So. 743 (1934).
The gravamen of the offense was succinctly stated in Jackson v. State, 251 Miss. 529, 170 So.2d 438 (1965):
“So an essential element of the offense under section 2153 is the making and delivering of the check to another person for value, and thereby obtaining from such other person money, goods, or other property of value.” (Emphasis added). 251 Miss, at 531, 170 So.2d at 439.
It would appear that the transaction between Pollard and B & M Motors was a credit sale, and not an exchange for value based on the belief that Pollard’s check was good at that particular moment.
If Pollard is to be believed, he was doing business on a hold-check basis, re *731 ceived the cars on Thursday and his check was deposited the following Tuesday. This would indicate a credit sale.
If Michael is to be believed, he frequently allowed dealers to take cars one day and mail in a check several days later. He testified that he had followed this practice with Pollard on two or three occasions. This also would indicate a credit sale based on Michael’s confidence in the purchaser generally. Michael had followed this procedure with Pollard just a week before. Pollard had taken delivery of two used cars on August 24, 1968, and his check to B & M Motors was dated August 27, 1968. Michael’s uncertain testimony about this transaction was:
“A I’m saying it is a possibility that— it’s been a long time, Mr. Parker, that he could have bought the cars, come by my place and bought the cars, verbally bought them, and said that when I send after the cars or when somebody brings them to me I’ll send the check back or I’ll put the check in the mail. There is that possibility, which I do that on numerous occasions.
“Q You have done that for him on numerous occasions, is that right?
“A No, probably a couple of times, but I do that with all of my dealers. I had no reason to doubt the man wouldn’t send me the check.
“Q In fact you had no reason to doubt that he wouldn’t send you the $2550 check ?
“A I didn’t—
“Q Isn’t that a fact?
“A I thought the check was good when he gave it to me, I’ll tell that.
“Q You had delivered his cars before that hadn’t you?
“A I’m not sure when they delivered the cars on the $2550 check.
“Q That’s all my questions.
^ ^ ^ ^
“A I believe he took those cars that day, Mr. McCreary I believe took those cars down there, I’m not sure.” (Emphasis added).
This Court said in Grenada Coca Cola Co. et al. v. Davis, 168 Miss. 826, 151 So. 743 (1934):
“The so-called bad check law does not cover the obtaining of goods where the goods had already been delivered, had passed completely out of the possession of the seller and away from his hands and premises in a previously completed transaction or transactions, although those transactions may have been at previous hours on the same day. There must be an exchange for the check at the time of delivery. The bad check law is severe enough without extending it by construction so as to include past deliveries, to say nothing of the question of the constitutional validity of such a statute if it were so construed.” (Emphasis added). 168 Miss, at 832, 151 So. at 744.
In the later case of Broadus v. State, 205 Miss. 147, 38 So.2d 692 (1949), this Court again interpreted the bad check law:
“In the case at bar, the pressing machinery had been delivered to the agent of Broadus and the agent had completely removed them from the possession and premises of Fowler and had departed from Roses Hill for Escatawpa, and had been gone for some thirty minutes before Broadus came up and delivered the check to Fowler in payment for same. When Fowler let the machinery leave his possession and control without demanding and receiving the purchase price, he extended credit for same. Broadus did not obtain the machinery with the check, for he had already, before that time, obtained the machinery. He obtained nothing with the check. The check was given in discharge of a *732 pre-existing debt. The bad check law has no application here.” 205 Miss, at 150-151, 38 So.2d at 693.
The court should have directed a verdict for the Defendant Pollard.
There is merit in the other two assignments of error that:
“I — The Court erred in granting State’s Instruction No. 1, and
“HI — The Court erred in permitting the State to go into the collateral matter of the appellant taking bankruptcy and also erred by permitting the State to impeach the appellant on the completely collateral issue of whether or not he had done business on a hold check basis with persons other than the principals in B & M Motors.”
Inasmuch as the judgment must be reversed and the Defendant discharged, it is unnecessary for us to discuss and decide any other issues raised.
Judgment reversed and defendant discharged.
GILLESPIE, P. J., and RODGERS, JONES and INZER, JJ., concur.