458 So.2d 734 (1984)
W.W. WALLEY
v.
STATE of Mississippi.
No. 55-163.
Supreme Court of Mississippi.
October 31, 1984.
Lawrence D. Arrington, Hattiesburg, for appellant.
Bill Allain, Atty. Gen. by Catherine Walker Underwood, Asst. Atty. Gen., Jackson, for appellee.
BEFORE ROY NOBLE LEE, P.J., and DAN M. LEE and ROBERTSON, JJ.
ROY NOBLE LEE, Presiding Justice, for the Court:
W.W. Walley was indicted, tried and convicted in the Circuit Court of Jones County for obtaining money under false pretenses in giving a bad check to one A.B. Graham, Jr. The lower court sentenced Walley to a term of two (2) years in custody of the Mississippi Department of Corrections and imposed a $1,000.00 fine upon him. He has appealed to this Court and assigns three (3) errors in the trial below. We are of the opinion that the court erred in refusing to grant Walley a peremptory instruction of not guilty at the conclusion of the evidence and that the judgment of the lower court should be reversed and Walley discharged.
A.B. Graham, Jr. is a woodyard operator in Jones County, Mississippi, and had known and done business with the appellant for a period in excess of one year. On October 16, 1981, appellant desired to purchase timber from a railroad company and haul the wood to Graham's woodyard. Appellant discussed the matter with Graham and informed him that the railroad company would not take his personal check for the timber but required him to pay for the timber with a check from some reputable woodyard. Graham issued his own check in the amount of five hundred fifty dollars ($550.00), payable to Jerrell Abercrombie. The payee was designated by appellant. In *735 return, appellant delivered to Graham his own personal check in the sum of $550.00.
On the date the check was drawn, October 16, 1981, appellant had six hundred dollars ($600.00) in his personal account, in the Lamar County Bank, upon which the check was drawn. However, two checks were paid from the account on that day, which reduced the balance below $550.00. Graham insisted that he held Walley's check for two or three months before presenting it for cash, although a bookkeeper at the bank testified it was presented prior to that time.[1]
Graham received appellant's check at the time he wrote his own check to Abercrombie in the sum of $550.00, but he indicated that his custom of doing business was to hold checks from wood haulers and when they had hauled sufficient wood to pay the amount of the check, he gave their checks back to them. As to the deal between Graham and appellant, Graham testified as follows:
MR. ARRINGTON:
Q Was there an agreement that you were to hold that check until Wally delivered you this wood?
A No, sir.
Q Why in the world did you hold the check for three or four months?
A I was aiming to just give him his check back if he brought the wood.
Q What?
A I was aiming to give him his check back if he brought the wood.
Q So, then you were going to give him the check back if he hauled you the wood?
A Yes, sir.
Q Is that right?
A Yes, sir.
* * * * * *
Q The truth of the matter, in the normal course of business, when he brought the wood in, you would have given him his check back, rather than to have to deposit it and write one on the company, isn't that right? Isn't that normally done?
A Yes, sir.
Walley failed to deliver the wood from the railroad company to Graham, pursuant to their agreement, and, since the check held by Graham was not paid, the indictment in this cause was returned by the Jones County Grand Jury.[2]
It is an elementary principle of law that obtaining property under false pretenses requires that the person who parted with the property of value must have relied upon a present token, fact or representation which caused him to part with his property. A promise or contract to deliver something in the future or to perform service in the future will not sustain the charge of obtaining property under false pretenses. Miller v. State, 413 So.2d 1041 (Miss. 1982); Hindman v. State, 378 So.2d 663 (Miss. 1980).
In Miller, the Court said:
Before a conviction can be had on a charge of false pretenses by delivery of a bad check, it is incumbent on the State to prove that a seller parts with something of value on the belief that the check is good at that particular time. [Citations omitted]. [413 So.2d at 1042].
We have carefully examined the record in this case and are of the opinion that Graham did not rely upon the $550.00 check delivered to him by appellant and, therefore, did not part with his own check and money on the basis of the Walley check. Rather, we are convinced that the transaction was a business deal between appellant and Graham following their customary course of doing business and that, had Walley delivered the railroad timber to Graham, a service to be performed in the future, appellant's check would have been *736 returned to him. Therefore, the lower court erred in refusing to grant appellant a peremptory instruction of not guilty. The judgment of the lower court is reversed and the appellant is discharged.
REVERSED AND APPELLANT DISCHARGED.
PATTERSON, C.J., WALKER, P.J., and BOWLING, HAWKINS, DAN M. LEE, PRATHER, ROBERTSON and SULLIVAN, JJ., concur.
NOTES
[1] Testimony from the bank representative and Graham is confusing on this point.
[2] Walley was indicted November 22, 1982, and was arraigned and entered a plea of not guilty on November 24, 1982. Subsequent to his arraignment, Walley's sister paid to Graham the full amount of the check.