Billy Parker was convicted in the Circuit Court of Itawamba County on a charge of false pretenses by delivery of a bad check in the sum of Five Thousand One Hundred Dollars ($5,100.00). The trial Court sentenced Parker to three years in the custody of the Mississippi Department of Corrections with eighteen (18) months to be suspended on condition that restitution be made to the victim and a fine of One Thousand Dollars ($1,000.00). On appeal Parker assigns two errors:
 I. The Trial Court erred in overruling Appellant's request for peremptory Instruction D-10 and Motion for (Acquittal) J.N.O.V.
 II. The Trial Court erred in allowing the State of Mississippi to cross-examine witness Jackie Furr On a collateral matters, same being Appellant's Duty to pay child support to the witness.
The events leading to this indictment and conviction occurred on Friday, September 8 and Saturday, September 9, 1978. The indictment was filed on September 13, 1979. Following a series of continuances requested by appellant, a trial was held on March 9, 1983, whereat appellant was found guilty as charged and sentenced as aforesaid on March 22, 1984.
Prior to the events that occurred on September 8, and 9, 1978, the prosecuting witness and the appellant had a series of business dealings. Appellant was a wholesale and retail dealer in household furnishings and the prosecuting witness was a manufacturer of such items. On September 8, 1978, Merl Kincade d/b/a K-Hill Furniture of Trebloc, MS, delivered to the place of business, operated by Parker, two truckloads of living room furniture. At that time, appellant gave to Kincade, the check, drawn on Merchants and Farmers Bank of Columbus, Mississippi, upon which the indictment and conviction rests. The transaction called for three truckloads of furniture and Kincade was instructed to deliver the third load on Saturday, September 9.
After delivering the two loads, Kincade proceeded to the First Citizen's Bank of Okolona and sought to deposit the check. The deposit was refused on the grounds that a previous check drawn by Parker on the Merchants and Farmer's Bank of Columbus had been returned marked "INSUFFICIENT FUNDS".
When the third load of furniture was delivered the following day, Parker assured Kincade that there had been a mistake at the bank and he would get it taken care of. Eventually, the first check was cashed and *Page 1035 
upon presentation of the $5,100.00 check to the bank upon which the check was drawn, it was marked "INSUFFICIENT FUNDS".
The evidence of what transpired at the time the first two loads of furniture were delivered by Kincade and the check issued by Parker is conflicting. Kincade testified:
 Q My question to you, Mr. Kincade, is whether at the time you delivered the furniture to Mr. Parker were you relying on his credit and his promise to pay you at some later time; or were you relying on the check in delivering the furniture to him?
 A I was relying on the check.
 Q Would you have delivered the two loads of furniture, and the additional load that you delivered the next day, had you not received the check?
 A No, sir. (R.23)
 . . . .
 Q One final question, Mr. Kincade. Would you have delivered the furniture to Mr. Parker had he not given you the check of Fifty-One Hundred Dollars?
 A No, sir. (R.38)
Parker testified in his own defense, and contended that he and Kincade had an agreement whereby Parker would always be one furniture load behind in payments. Parker testified:
. . . I said, "I want it plainly understood, if you default on our agreement, that load that I hold behind will never be paid for." He said, "Well, could I pick up a check when the load is dropped?" I said, "Yes, sir. I will cut you a check; but, I want you to understand that the check will not be made good until the second load is dropped. When the second load is dropped, I will call the bank and have them okay that check." And, I said, "When you bring another load in, a second check will be given. I will always hold one load behind. And, if you don't bring but two loads a week, one is going to be held behind."
There was even conflict in the testimony as to the persons present when the check was exchanged. Kincade testified that Parker, his secretary, and one Jimmy Stanfield were present when Parker presented the check to Kincade. Jackie Furr testified that she, Parker, and Kincade were the only ones present. She also testified that she heard Parker tell Kincade that the check would not be good until another load of furniture was delivered.
Kincade denied any such agreement with Parker, and on rebuttal, the State called Jimmy Stanfield to testify that he heard no such remarks concerning delayed payment.
Thus you have a clear-cut case of conflict in the evidence concerning whether Kincade parted with his property in exchange for the check or whether they had a delayed payment agreement as claimed by Parker.
In overruling the motion for directed verdict, the trial court stated:
 It appears to the Court that the gist of this offense is what the agreement was between the parties. Between the Defendant and Mr. Kincade to supply the property, possession of the property parted with by Mr. Kincade and what induced him to do that. And, I think the point is well taken. It is not necessarily required that the check be dated the date it was given if the check was given for the purpose of inducing the owner to part with his property, and he parted with it in return for that check and expected the check to be a good check. Now, that's the grievement (gravamen) of the offense. It's a question for the jury to determine whether or not that situation occurred.
The statute in force at the time of the events involved in this case, Section 1., Chapter 476, General Laws of Miss. 1972, provided as follows:
 It shall be unlawful for any person with fraudulent intent to make or draw or issue or utter or deliver any check, draft or order for the payment of money drawn on any bank, corporation, firm or person for the purpose of obtaining money, or any article of value, or to obtain services except payment or payments on *Page 1036 
past due accounts, knowing at the time of making, drawing, uttering or delivering said draft, check or order that the maker, or drawer, has not sufficient funds in, or on deposit with, such bank, corporation, firm or person, for the payment of such check, or draft, or order in full, and all other checks, drafts or orders upon such funds then outstanding.[1]
There is no question but that Kincade parted with furniture valued at $5,100.00. We think the evidence presented an issue for the jury as to whether or not that parting with a thing of value was in exchange for the check or in furtherance of an agreement with appellant that the manufacturer would always be one load of furniture behind in receiving payment. The evidence presented a jury question on this issue.
In keeping with Section 30, Mississippi Constitution of 1890 that: "There shall be no imprisonment for debt.", this Court has repeatedly held, as in Miller v. State, 413 So.2d 1041 (Miss. 1982), that:
 Before a conviction can be had on a charge of false pretenses by delivery of a bad check, it is incumbent on the state to prove that a seller parts with something of value on the belief that the check is good at that particular time. Hindman v. State, 378 So.2d 663 (Miss. 1980); Pollard v. State, 244 So.2d 729 (Miss. 1971); Kitchens v. Barlow, 250 Miss. 121, 164 So.2d 745 (1964); Broadus v. State, 205 Miss. 147, 38 So.2d 692 (1949); Grenada Coca Cola Co. v. Davis, 168 Miss. 826, 151 So. 743 (1934); and Odum v. Tally, 160 Miss. 797, 134 So. 163 (1931). 413 So.2d at 1042.
See also, Walley v. State, 458 So.2d 734 (Miss. 1984), where a conviction of false pretense was reversed under the amended statute. If a creditor-debtor relationship is created by the transaction, a conviction of false pretenses may not stand. However, if the State proves that a seller parts with something of value on the belief that the check is good at that particular time, a conviction of false pretenses may be upheld.
The standard of review where an appellant contends that he is not guilty as a matter of law is set forth in May v. State,460 So.2d 778 (Miss. 1984), where on pages 780 and 781 the Court stated:
 The motion for judgment of acquittal notwithstanding the verdict tests the legal sufficiency of the evidence supporting the verdict of guilty. It is in effect a renewal of the defendant's request for a peremptory instruction made at the close of all the evidence. It asks the court to hold, as a matter of law, that the verdict may not stand and that the defendant must be finally discharged.
 Where a defendant has moved for j.n.o.v., the trial court must consider all of the evidence — not just the evidence which supports the State's case — in the light most favorable to the State. The State must be given the benefit of all favorable inferences that may reasonably be drawn from the evidence. Glass v. State, 278 So.2d 384, 386 (Miss. 1973). If the facts and inferences "so considered" point in favor of the defendant with sufficient force that reasonable men could not have found "beyond a reasonable doubt" that the defendant was guilty, granting the motion is required. On the other hand, if there is substantial evidence opposed to the motion — that is, evidence of such quality and weight that having in mind the beyond a reasonable doubt burden of proof standard, reasonable fair-minded men in the exercise of impartial judgment might reach different conclusions — the motion should be denied.
 In other words, once the jury has returned a verdict of guilty in a criminal case, we are not at liberty to direct that the defendant be discharged short of a conclusion on our part that given the evidence, taken in the light most favorable to the verdict, no reasonable, hypothetical *Page 1037 
juror could find beyond a reasonable doubt that the defendant was guilty. Pearson v. State, 428 So.2d 1361, 1364 (Miss. 1983).
The jury resolved the conflicts in the evidence against Parker. We cannot say that he was not guilty as a matter of law under the standard of review set forth above.
DID THE TRIAL COURT ERR IN PERMITTING CROSS-EXAMINATION OF WITNESS, MRS. JACKIE FURR, CONCERNING HER PAST AND PRESENT RELATIONSHIPS WITH DEFENDANT
Appellant contends that it was error to permit, over objection, cross-examination of Mrs. Jackie Furr that brought out that she was formerly married to appellant, one child was born of that union, and appellant was contributing partly to the support of that child.
Miss. Code Ann. § 13-1-13 (1972), provides, in part: "Any witness may be examined touching his interest in the cause. . . ."
Mrs. Jackie Furr testified that she was present when the check was delivered to Kincade. Her testimony tended to corroborate Parker's claim that there was a delayed payment deal between the parties. On cross-examination it was brought out that the witness and Parker had formerly been married to each other and that Parker was obligated to contribute partially to the support of the minor child of that marriage. Jimmy Stanfield, who was called as a rebuttal witness, testified that the then Mrs. Parker was not present at the time the check was delivered.
The right to cross-examination of witnesses and to test the interest of the witnesses in the outcome of the litigation has been held to be a valuable and highly protected right. The right of cross-examination has been limited only to clear cases of irrelevancy, trespass beyond admissible grounds, or extremes of continual aimless repetition. Patrick v. State, 285 So.2d 165
(Miss. 1973). We think the pecuniary interest of this witness in having Parker free of confinement was a relevant area of cross-examination. In Sanders v. State, 352 So.2d 822 (Miss. 1977), this Court stated:
 Wide latitude is to be allowed on cross-examination to show bias or motive for the purpose of affecting credibility. Cody v. State, 167 Miss. 150, 148 So. 627 (1983). Although the extent of this cross-examination lies within the sound discretion of the trial court, its ruling will be reversed when an abuse of that discretion is shown. McElroy, Mississippi Evidence, § 183, pp. 514-515 (1955).
The judgment of the trial court is supported by the evidence, and it was not error for the State to cross-examine the witness Mrs. Furr about her relationship and dealings with appellant.
AFFIRMED.
PATTERSON, C.J., WALKER and ROY NOBLE LEE, P.JJ., and HAWKINS, DAN M. LEE, PRATHER, ROBERTSON, SULLIVAN and ANDERSON, JJ., concur.
[1] This section amended by Chapter 523, General Laws of Miss 1983, by making changes not material to this case.