# IN THE COURT OF APPEALS
# OF THE
# STATE OF MISSISSIPPI
## NO. 1998-KA-01099-COA

**WALTER WHITE**                                                                    **APPELLANT**

**v.**

**STATE OF MISSISSIPPI**                                                            **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 03/05/1998 |
| TRIAL JUDGE: | HON. ROBERT LOUIS GOZA JR. |
| COURT FROM WHICH APPEALED: | RANKIN COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | JOHN M. COLETTE |
| ATTORNEYS FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: JOHN R. HENRY JR. |
| DISTRICT ATTORNEY: | RICHARD D. MITCHELL |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| TRIAL COURT DISPOSITION: | 03/27/1998: SALE OF CRYSTAL METHAMPHETAMINE - COUNT I, COUNT II AND COUNT III - TO SERVE A TERM OF EIGHT (8) YEARS UNDER COUNT I, A TERM OF EIGHT (8) UNDER COUNT II AND A TERM OF EIGHT (8) YEARS UNDER COUNT III. COUNT I AND II SHALL BE SERVED CONCURRENTLY AND THE SENTENCE UNDER COUNT III SHALL BE SERVED CONSECUTIVELY TO THEM |
| DISPOSITION: | AFFIRMED - 02/01/2000 |
| MOTION FOR REHEARING FILED: | 02/03/2000; denied 4/4/2000 |
| CERTIORARI FILED: | 4/14/2000; granted 9/14/2000 |
| MANDATE ISSUED: | |

BEFORE KING, P.J., BRIDGES, AND MOORE, JJ.

MOORE, J., FOR THE COURT:

¶1. Walter White was found guilty by a Rankin County Circuit Court jury of selling crystal methamphetamine on three separate occasions. On appeal he contends that his constitutional rights were violated by the trial court's refusal to permit him to cross-examine a prosecution witness about a prior conviction; that his constitutional rights to a fair trial were violated by prosecutorial misconduct; and that the trial court erred in refusing to grant him a new trial because of prosecutorial discovery violations or that the overwhelming weight of the evidence demanded a judgment notwithstanding the verdict. We disagree with

all the assignments of error and affirm.

## FACTS

¶2. Rankin County law enforcement officials used Robert Shedd as a confidential informant to purchase different amounts of crystal methamphetamine from White on March 19 and 20, 1995 and April 5, 1995. On the respective dates, Shedd purchased $200, $1600 and $3000 worth of crystal methamphetamine from White at White's truck shop where he repaired tractor trucks. On each occasion, Shedd was wired with audio recording equipment for each buy, and he was given the usual briefing and debriefing along with being searched before and after each transaction.

¶3. In addition to the testimony of the confidential informant, the State offered the testimony of Brandon Narcotics Officer Bruce Kirby and Alan Spears, an agent with the Jackson office of the Federal Bureau of Investigations (F.B.I.). Kirby testified about each occasion on which Shedd purchased drugs from White. He explained that he and others listened via the audio equipment on Shedd to his conversations with White and the others who were present at the time Shedd made his purchases. Kirby stated that while he did not eye witness the transactions, he was able to identify Shedd's voice on the tapes made of the deals.

¶4. Spears was contacted by the Mississippi Bureau of Narcotics in March of 1995 concerning a purchase of crystal methamphetamine. The Mississippi Bureau requested U.S. funds in the amount of $3,000 to make the purchase. Spears provided the funds to the Mississippi officials and assisted them in the April 5, 1995 surveillance of Shedd's purchase of crystal methamphetamine from White.

¶5. White, who elected not to testify, presented testimony of a neighbor and his wife who both indicated that White was not in the business of selling narcotics. Rather, he was a truck driver and bought, repaired, and sold trucks.

¶6. Prior to trial White moved the trial court to allow him to cross-examine the confidential informant about a prior arrest and a prior conviction unrelated to his activities as a confidential informant. The trial court denied the motion ruling that such testimony was inadmissible because it did not bear on Shedd's veracity.

¶7. The Rankin County jury hearing the case convicted White on the three counts of selling crystal methamphetamine. White, a first-time offender, was sentenced to serve eight years on each count, Counts I and II to be served concurrently, and Count III to be served consecutively to the sentences in Counts I and II. The trial court suspended the sentence imposed as to Count III, pending the successful completion of a five-year probation. After the denial of his post-trial motions, White perfected this appeal.

## ISSUES

**I. THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT REFUSED WHITE FULL AND OPEN CROSS-EXAMINATION OF SHEDD IN VIOLATION OF WHITE'S STATE AND FEDERAL CONSTITUTIONAL RIGHTS.**

**II. THE TRIAL COURT ERRED IN FAILING TO GRANT WHITE A JUDGMENT NOTWITHSTANDING THE VERDICT.**

**III. THE TRIAL COURT ERRED IN FAILING TO GRANT WHITE A NEW TRIAL.**

**IV. THE STATE'S FAILURE TO COMPLY WITH RULE 4.06 PROVIDING WHITE COMPLETE PRETRIAL DISCOVERY VIOLATED WHITE'S CONSTITUTIONAL RIGHTS TO DUE PROCESS.**

**V. PROSECUTORIAL MISCONDUCT VIOLATED WHITE'S RIGHTS UNDER THE FIFTH, SIXTH, EIGHTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE THREE SECTIONS FOURTEEN, TWENTY-SIX AND TWENTY-EIGHT OF THE MISSISSIPPI CONSTITUTION OF 1890.**

**VI. THE CUMULATIVE IMPACT OF THE ERRORS AT TRIAL VIOLATED WHITE'S RIGHT TO A FAIR TRIAL UNDER THE EIGHTH AND FOURTEENTH AMENDMENTS TO THE CONSTITUTION.**

**DISCUSSION**

**I. THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT REFUSED WHITE FULL AND OPEN CROSS-EXAMINATION OF SHEDD IN VIOLATION OF WHITE'S STATE AND FEDERAL CONSTITUTIONAL RIGHTS.**

¶8. White specifically asserts that his Sixth Amendment right to confront the witnesses testifying against him was violated by the trial court's refusal to allow him to cross-examine Shedd about his prior criminal conviction. Before trial, counsel for White requested that he be allowed to cross-examine Shedd concerning a 1990 arrest which occurred in Mississippi and a Texas criminal conviction for possession of narcotics. White argued that under Mississippi Rule of Evidence 609 he was entitled to delve into Shedd's prior criminal record on cross-examination. The trial court ruled that the arrest was clearly inadmissible pursuant to Rule 609 and that because the Texas conviction did not bear on Shedd's veracity, it was likewise inadmissible. In his reply brief, White argues that the trial court's failure to perform a *sua sponte*, on-the-record evaluation of the probative value of such testimony requires reversal. In addition, White submits that the trial court failed to make a distinction between Rules 609(a)(1) and (2) of the Mississippi Rules of Evidence.

¶9. Rule 609 provides:

> For the purpose of attacking the credibility of a witness, evidence that he has been convicted of a crime shall be admitted if elicited from him or established by public record during cross-examination but only if the crime (1) was punishable by death or imprisonment in excess of one year under the law under which he was convicted, and the court determines that the probative value of admitting this evidence outweighs its prejudicial effect on a party or (2) involved dishonesty or false statement, regardless of the punishment.

M.R.E. 609. In findings of fact and conclusions of law in response to White's motion for new trial, the trial court determined first that Shedd's 1990 arrest which did not lead to a conviction was clearly inadmissible under Mississippi Rules 608 and 609. Next, the trial court opined: "[P]ursuant to MRE 609 and the factors set forth in *Peterson v. State*, 518 So. 2d 632, 636 (Miss. 1987), that the drug conviction of Roy Shedd was inadmissible for impeachment purposes. The prejudicial effect of any mention of Shedd's conviction

would have far outweighed any possible probative value." The trial court also pointed out that the Texas conviction occurred after Shedd assisted law enforcement officials in procuring the crystal methamphetamine from White and after Shedd submitted a written statement regarding his involvement in the drug transactions with White. The trial court further concluded in its post-trial findings that Shedd was "not subject to a credibility attack under MRE 609. Furthermore, Shedd was cross examined from . . .[his written] statement at trial by the Defendant's attorney and no major inconsistencies were revealed."

¶10. The State argues that the trial record does not show that White raised the issue of being denied his constitutional right to confront a witness at the trial level. While conceding that White advanced a due process argument at trial, the State asserts on appeal that White waived any argument of a constitutional violation concerning the confrontation of witnesses as the matter was not properly preserved by an objection at trial and/or a statement of the argument in White's motion for new trial. The State insists that even if properly preserved, the argument is without merit. The State contends that there was no connection between Shedd's Texas conviction and White's sale of crystal methamphetamine, and that the conviction occurred a significant time after White's sales to Shedd.

¶11. The party seeking to use a prior conviction for impeachment purposes under M.R.E. 609 is required "to show that the conduct giving rise to the prior conviction was such that it bears upon the witness's propensity for truthfulness." *Tillman v. State,* 606 So. 2d 1103, 1107 (Miss. 1992)*; see also Saucier v. State*, 562 So. 2d 1238, 1245 (Miss. 1990); *McInnis v. State*, 527 So. 2d 84, 88 (Miss. 1988). This is the "threshold inquiry for 609(a)(1) analysis." *Bennett v. State*, 738 So. 2d 300 (¶8) (Miss. Ct. App. 1999). "This applies whether the prosecutor is attempting to impeach a defendant or whether a defendant is attempting to impeach a witness. *Id*. (citing *Saucier*, 562 So. 2d at 1245). Once a prima facie showing that the conduct giving rise to the prior conviction concerns the witness's veracity is established, the trial court is required to consider and balance the factors set out in *Peterson v. State*, 518 So. 2d 632, 636 (Miss. 1987). M.R.E. 609; *Johnson v. State*, 723 So. 2d 1205 (¶ 29) (Miss. Ct. App. 1998). The analysis requires an on-the-record balancing of such factors as: (1) impeachment value of the prior offense; (2) date of the prior conviction; (3) similarity between the past and presently charged offenses; (4) importance of defendant's [or witness's] testimony; and (5) whether credibility is central. *Peterson,* 518 So. 2d at 636. The trial judge is required to make an on-the-record determination on whether the probative value of the prior conviction outweighs its prejudicial effect. *Id.* However, until a prima facie showing that the conduct giving rise to the prior conviction concerns the witness's veracity is made, there is nothing for the trial court to balance or weigh against the prejudicial effect. *McInnis*, 527 So. 2d at 88. In *McGee v. State*, 569 So. 2d 1191 (Miss. 1990), the Mississippi Supreme Court reiterated its position on Rule 609(a) ruling as follows:

> The mandate of our cases is that the prosecution has a threshold burden of showing prima facie the prior conviction's probative value. The prosecution must demonstrate how the conduct, of which the prior conviction is but convincing evidence "may suggest the witness less than credible." We say this once again that Rule 609 declares prior convictions admissible (if at all) solely on the witness' propensity for truthfulness, and not to show a propensity on the part of the defendant to have acted on the present occasion in conformity with the criminal character suggested by the previous conviction.

*Pugh v. State*, 584 So. 2d 781, 784 (Miss. 1991).

¶12. Pursuant to M.R.E. 609(a)(1) and case law as stated above, the trial court, when faced with a question of the admissibility of a witness's prior conviction, must perform a balancing test to determine the prejudicial effect if any on a party to the action and whether the probative value of such evidence outweighs any prejudicial effect found. The record in this case discloses that defense counsel raised the issue before trial and out of the presence of the jury in the trial judge's chambers. The in-chambers discussions were not made part of the record. Rather, defense counsel was allowed to re-state his objections on-the-record immediately preceding trial at which time the trial court indicated that it would stand by its earlier ruling that Shedd's prior conviction was inadmissible because such evidence did not concern his veracity. It is noteworthy that, while not required in this instance, White did not proffer the testimony of Shedd about his prior conviction. Additionally, there is no other evidence in the record evincing Shedd's prior conviction. Counsel for White mentioned the existence of a NCIC (National Crime Information Center) report that was given to him by the prosecutor shortly before trial; however, the document was not made part of the appellate record. The only offer White made to the trial court was his argument that Shedd was a convicted felon and that the jury was entitled to the information that the State's primary witness was not an "ordinary citizen," but rather a convicted felon.

¶13. Post-trial and in response to White's motion for new trial, the trial judge made findings of fact and conclusions of law and, in effect, conducted the required 609 balancing test finding that the prejudicial effect of such evidence outweighed its probative value. In reaching this conclusion, the trial court opined that Shedd's prior "violation of the controlled substances law . . . offers little, if any, impeachment value." The trial court gave significant consideration to the fact that Shedd's conviction occurred after the transactions with White transpired and his written statement submitted to law enforcement officials.

¶14. It is not necessary for us to evaluate this matter under the *Peterson* analysis because we find that White did not make a threshold showing that the prior conviction related to Shedd's veracity. As such, the trial court was not required to perform an on-the-record and at-trial balancing of the *Peterson* factors. White failed in his burden to show the trial court how the prior conviction related to Shedd's ability to tell the truth. Accordingly, we find that this issue is without merit.

## II. THE TRIAL COURT ERRED IN FAILING TO GRANT WHITE A JUDGMENT NOTWITHSTANDING THE VERDICT.

¶15. Under this assignment of error, White asserts that the lower court erred when it denied White a judgment notwithstanding the verdict because the evidence was insufficient to support the jury's verdict, that verdict was "manifestly against the weight of the evidence," and because no reasonable jury could have found White guilty based on the evidence presented by the State. White attacks the credibility of the State's evidence pointing out that of the three witnesses testifying on behalf of the State, the confidential informant was the only witness who could verify that the drug transactions involved White and not the others who were in White's shop at the time of the purchases. White further maintains that the confidential informant's testimony is unreliable because he was a police informant being paid by the "government" to make the drug purchases. He asserts that the testimony of the two law enforcement officers was insufficient to support the verdict because neither of them witnessed the drug transaction.

¶16. In opposition, the State contends that the evidence was in fact sufficient to support the verdict against the Appellant. Shedd, the confidential informant, testified that he had known White since 1980 and identified White as the one from whom he made the purchases of drugs. Further, Shedd denied that he

purchased the crystal methamphetamine from any of the others present during the transactions. Rather, Shedd was certain that he bought the illegal substances from Walter White. Kirby and Spears did not eyewitness the drug transactions. Rather, they listened to the drug deal while it took place. Their testimony corroborated Shedd's description of the deals.

¶17. White's challenge of the weight of the evidence is misplaced here. A challenge to the weight of the evidence is considered when a motion for new trial is made rather than on a motion for a judgment of a acquittal notwithstanding the verdict. *Butler v. State*, 544 So. 2d 816, 819 (Miss. 1989).

> A motion for judgment notwithstanding the verdict, after the jury verdict is returned, essentially tests the legal sufficiency of the evidence that supports a guilty verdict. The standard of review for such claims is familiar:

> The motion for judgment of acquittal notwithstanding the verdict tests the legal sufficiency of the evidence supporting the verdict of guilty. It is in effect a renewal of the defendant's request for a peremptory instruction made at the close of all the evidence. It asks the court to hold, as a matter of law, that the verdict may not stand and that the defendant must be finally discharged.

> Where a defendant has moved for jnov, the trial court must consider all of the evidence which supports the State's case--in a light most favorable to the State. The State must be given the benefit of all favorable inferences that may reasonably be drawn from the evidence. *Glass v. State*, 278 So. 2d 384, 386 (Miss. 1973). If the facts and inferences 'so considered' point in favor of the defendant with sufficient force that reasonable men could not have found beyond a reasonable doubt that the defendant was guilty, granting the motion is required. On the other hand, if there is substantial evidence opposed to the motion--that is, evidence of such quality and weight that having in mind the beyond a reasonable doubt burden of proof standard, reasonable fair-minded men in the exercise of impartial judgment might reach different conclusions-- the motion should be denied.

*Butler*, 544 So. 2d at 819 (citing *Parker v. State*, 484 So. 2d 1033, 1036 (Miss. 1986) (other citations omitted)).

¶18. Viewing the evidence in a light most favorable to the verdict in this case, there was sufficient evidence to support the jury's verdict. Shedd's testimony was that White was the person from whom he purchased crystal methamphetamine. Law enforcement officers corroborated Shedd's testimony that he made three purchases of the illegal substance from White. Testimony of a single witness is sufficient to support a conviction. *Doby v. State*, 532 So. 2d 584, 590 (Miss. 1988). In this case, there was sufficient evidence on which to base White's conviction. Accordingly, we conclude that the trial court did not commit error in denying White a judgment notwithstanding the verdict.

### III. THE TRIAL COURT ERRED IN FAILING TO GRANT WHITE A NEW TRIAL.

¶19. Here, White again contests the credibility of Shedd's testimony. However, this issue was not preserved for our review. Pursuant to *McLemore v. State*, 669 So. 2d 19, 24 (Miss. 1996), an appellant must have included in his motion for new trial the argument that the verdict was against the overwhelming weight of the evidence in order for the matter to be preserved for our review. *See also Jackson v. State*, 423 So. 2d 129, 131 (Miss. 1982). White's motion for new trial did not include a challenge to the weight of the evidence. Rather, the motion focused solely on the issue of Shedd's credibility and the contention that it was

error for the trial court to limit the defense's cross-examination of Shedd. Thus, this issue is barred from review. Notwithstanding the Appellant's failure to properly raise the matter in his motion for a new trial, the issue lacks any merit.

¶20. White bases his argument on the his allegation that Shedd's testimony is not worthy of belief because he is a "convicted felon, indicted suspect, and paid informant of law enforcement." Interestingly, the only conflicting evidence was that of the two defense witnesses who were not present at the time of the drug transactions and who testified as to White's reputation and their belief that White was not a drug dealer.

¶21. A motion for a new trial "implicates the trial court's sound discretion." *McClain v. State,* 625 So. 2d 774, 781 (Miss. 1993). Whether to grant a new trial is a decision resting in the sound discretion of the trial court, and the motion should not be granted except to prevent an unconscionable injustice. *Id.* Therefore, we are authorized to reverse only for abuse of discretion, and on review we accept as true all evidence favorable to the State. The responsibility of weighing and considering conflicting evidence, evaluating the credibility of witnesses, and determining whose testimony should be believed is the function of the jury. *Id.* The jury has the duty to determine the impeachment value of inconsistencies or contradictions as well as testimonial defects of perception, memory, and sincerity. *Noe v. State,* 616 So. 2d 298, 302 (Miss. 1993). "It is not for this Court to pass upon the credibility of witnesses and where evidence justifies the verdict it must be accepted as having been found worthy of belief." *Williams v. State*, 427 So. 2d 100, 104 (Miss. 1983). As to matters upon which the evidence was in conflict, the court should assume that the jury resolved the conflict in a manner consistent with the verdict. *Gossett v. State*, 660 So. 2d 1285, 1294 (Miss. 1995).

¶22. The jury was charged with the responsibility of judging the credibility of Shedd's testimony, and it is not the place of this court to judge the credibility of witness testimony. Further, it cannot be said that the overwhelming weight of the evidence points towards White's innocence. Therefore, we rule that the trial court did not abuse its discretion in denying White's motion for new trial.

## IV. THE STATE'S FAILURE TO COMPLY WITH RULE 4.06 PROVIDING WHITE COMPLETE PRETRIAL DISCOVERY VIOLATED WHITE'S CONSTITUTIONAL RIGHTS TO DUE PROCESS.

¶23. White argues that on the eve of trial he learned that the State had an FBI transcript of the recordings the State had previously provided to White of the drug transactions. White conceded that he had a copy of the tapes, but argues that he was ill-prepared at trial because he was not provided a copy of the transcripts of the tapes prepared by the FBI. Further, he argues that he was entitled to review the transcript and to be given the opportunity to seek expert assistance to refute the State's claim of reliable transcription. He asserts that it was error for the trial court to deny him a continuance arguing that he was entitled to continuance of his trial to allow him to review the transcript prior to trial. In addition, White, relying on *Ake v. Oklahoma*, 470 U.S. 68 (1985), argues that the he was deprived of his "constitutional right to equal access to expert assistance." Even though the trial court prohibited the State from using the FBI transcript at trial, White contends that he was prevented from evaluating *all* the evidence against him and as a result his rights under the Eight and Fourteenth Amendments were violated.

¶24. The State first points out that the record does not show that White requested a continuance to review the FBI transcript. Prior to trial, White complained to the trial court about having not been provided with the FBI transcript in discovery. However, White's objection on this issue is unclear. He did not ask the trial

court for a continuance or mistrial. White concedes that the State gave him copies of the tapes and argued to the trial court that he was somehow prejudiced by not receiving a copy of the FBI transcript. In the proceedings prior to trial, the trial court did not make a ruling on the matter. Later during trial, Officer Kirby identified the tape which contained the recording of the March 19,1995 transaction between Shedd and White. Counsel for the Appellant stated that he had the "same objection" concerning the tape adding only that the State failed to lay the proper predicate for the introduction of the tape into evidence. The record reflects that an off-the-record bench conference took place presumably on this issue. However, the resolution of this matter, if one was made during the bench conference, was not made part of this record. The FBI transcripts were not introduced by the State nor have the transcripts been made part of the record for purposes of appeal. The State also points out that White did not include this issue in his motion for new trial thus barring our review of this matter on appeal.

¶25. First, the matter was not properly preserved for our review as it was not included in White's motion for a new trial nor did White request a continuance; the Appellant's objection at trial is unclear and not specific; and there is no ruling by the trial judge in the record for this Court to find erroneous. Even if properly preserved for appeal, this issue lacks merit on the basis that White was not prejudiced. The trial court did not allow the State to use the transcripts at trial, and White had in his possession prior to trial a copy of the tape introduced by the State. Finally, White did not request a continuance of his trial during trial or assert that the trial court erred in refusing a continuance in his motion for new trial.

## V. PROSECUTORIAL MISCONDUCT VIOLATED WHITE'S RIGHTS UNDER THE FIFTH, SIXTH, EIGHTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE THREE SECTIONS FOURTEEN, TWENTY-SIX AND TWENTY-EIGHT OF THE MISSISSIPPI CONSTITUTION OF 1890.

¶26. White contends that misconduct on the part of the State's attorney violated his rights under the state and federal constitutions to a fair trial. Specifically, White points to three certain instances of prosecutorial misconduct. First, White was offended by the prosecutor's question of Spears: "did you have any type of case name for this operation?" White argues that this question prejudiced him because it led the jury to believe that he was involved in other and even "greater" crimes. He maintains that "[o]peration names are usually used for military activities and investigations into multinational cartels." After stating his objection, the trial court overruled his protest to the question. Secondly, White urges that he was prejudiced when the prosecutor stated to Spears: "How much in the drug lingo. . . let's educate the jury here, how long will a gram of crystal meth last . . . ." Lastly, White objects to language used by the prosecutor to describe White during closing statements. In his final argument, the prosecutor referred to White as the "worse guy" or "worse kid in the world." White made the proper objections which were overruled by the trial court.

¶27. In response, the State contends that White failed to properly preserve this issue for appeal. The State points out that White did not move for a mistrial at the time such statements were made and that this assignment of error was not included in White's motion for new trial. Relying on *Anderson v. State*, 724 So. 2d 475 (Miss. Ct. App. 1998) for its position, the State asserts that this assignment of error is, therefore, not properly before this Court.

¶28. Even if this Court were to find that the issue of prosecutorial misconduct was properly preserved for appellate review, the State maintains the issue lacks merit. Before an answer was given to the question, "did you have any type of case name for this operation?", defense counsel objected, the trial judge sustained the

objection, and the question was never answered. As to the question regarding drug lingo, defense counsel timely objected, and the trial court responded: "I think the jury is entitled to know the quantity, how much space it occupied, how much it is. If Officer Kirby can give them some idea of the bulk of an ounce." Thereafter, a bench conference occurred the result of which is not included in the record. However, in the following testimony, Officer Kirby explained where and when he received the crystal methamphetamine.

¶29. In the State's closing, the following occurred:

> BY MR. MITCHELL [PROSECUTOR]: I thought it was kind of neat the way Mr. Colette brought in his sons, Sherwood and Zack. You know you walk in and say who did it, it wasn't me, it was somebody else. That is your defense. That is their defense. Wasn't me, somebody else. Maybe drugs were sold here. I think Mr. Colette just about conceded the fact that drugs were sold out of that shop. So just like your two children at home, I didn't do it, it was the neighbor kids, worse kid in the world, I didn't do it, it was the worse guy....

> BY MR. COLETTE: Objection, improper closing argument.

> BY THE COURT: Overruled.

¶30. The State argues that White's argument concerning these instances of alleged misconduct are unfounded and lack any basis in fact. Further the State contends that White's failure to request a mistrial at the time the statements were made or questions asked evinces White's satisfaction with the trial court's resolution to situation.

¶31. The standard of review this Court applies to lawyer misconduct during opening or closing statements is "whether the natural and probable effect of improper argument is to create unjust prejudice against the accused so as to result in a decision influenced by prejudice." *Harvey v. State*, 666 So. 2d 798, 801 (Miss. 1995). The trial court must exercise considerable discretion in applying this test and considering the circumstances of each case when ruling on whether arguments are overly prejudicial. *Id*.

¶32. First, we rule that White wholly failed to preserve this issue for appeal when he failed to include it in his motion for new trial. Notwithstanding a procedural bar, the statements made by the prosecutor were properly handled by the trial court. Furthermore, none of the allegations of misconduct even taken together created such prejudice against White that his conviction was a result influenced by prejudice. As such, we affirm the trial court on this issue.

## VI. THE CUMULATIVE IMPACT OF THE ERRORS AT TRIAL VIOLATED WHITE'S RIGHT TO A FAIR TRIAL UNDER THE EIGHTH AND FOURTEENTH AMENDMENTS TO THE CONSTITUTION.

¶33. White argues that the cumulative effect of the trial court's errors denied him his state and federal constitutional rights to a fair trial. This Court may reverse a conviction and/or sentence because the cumulative effect of trial errors taken independently would not compel reversal. *See Jenkins v. State*, 607 So. 2d 1171, 1183-84 (Miss. 1992); *Hansen v. State*, 592 So. 2d 114, 153 (Miss. 1991). Moreover, a criminal defendant is not entitled to a perfect trial, only a fair trial. *Sand v. State*, 467 So. 2d 907, 911 (Miss. 1985).

¶34. As indicated in the previous discussions, we have determined that the trial court did not commit

reversible error. Accordingly, this issue lacks merit.

**¶35. THE JUDGMENT OF THE CIRCUIT COURT OF RANKIN COUNTY OF THREE COUNTS OF THE SALE OF CRYSTAL METHAMPHETAMINE AND SENTENCE OF EIGHT (8) YEARS UNDER COUNT I, EIGHT (8) YEARS UNDER COUNT II AND EIGHT (8) YEARS UNDER COUNT III, WITH THE TERMS IN COUNT I AND II TO BE SERVED CONCURRENTLY AND THE SENTENCE UNDER COUNT III SHALL BE SERVED CONSECUTIVELY TO THE TERMS FOR COUNT I AND COUNT II, ALL TO BE SERVED IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AND FORFEIT RIGHT TO OPERATE A MOTOR VEHICLE FOR SIX MONTHS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.**

**McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., BRIDGES, DIAZ, IRVING, LEE, PAYNE, AND THOMAS, JJ., CONCUR.**