BARNES, J.,
for the Court.
¶ 1. Jim Durham (Durham) was convicted by a Forrest County Circuit Court jury on four counts of writing bad checks with fraudulent intent in violation of Mississippi Code Annotated section 97-19-55(l)(a) (Rev.2006). He was sentenced to three years in Counts I-IV, all in the custody of the Mississippi Department of Corrections (MDOC), with the three years on Count Four suspended and ordered to be served under post-release supervision. Durham appeals his conviction, and finding error, we reverse the circuit court’s judgment and remand for a new trial.
SUMMARY OF FACTS AND PROCEDURAL HISTORY
¶ 2. Durham and his father owned and operated an auction business, Durham Inc., in Brooklyn, Mississippi. In the course of business, Durham Inc. would receive various types of large equipment on consignment, and once the equipment was sold at auction, the proceeds would be deposited into an escrow account and a check issued to the consignor. In early 2008, Durham Inc. received equipment from Quin-co Construction (Quin-co); Mad Dog, Inc. (Mad Dog); Southeastern Concrete Company (Southeastern); and the Warren County Board of Supervisors (Warren County). Following the sale of the equipment, Durham issued checks for the sale price of each consignor’s equipment, less commission, from the company’s escrow account at Community Bank. The following is the list of the checks distributed by Durham that are at issue in this appeal:
Payee Date Issued: Amount
Quin-Co May 31,2008 $ 4,580.00
Southeastern June 20,2008 $ 84,072.00 Warren County June 20, 2008 $125,000.00
Mad Dog June 20,2008 $ 14,850.00
¶ 8. Durham Inc. had been experiencing cash-flow problems as a result of poor business decisions, and Durham had obtained several loans in order to cover operating expenses. However, whenever Durham Inc.’s escrow account had a negative balance and a check was presented for payment, Community Bank would honor the check regardless of the insufficient funds and merely charge Durham Inc. a fee.
¶ 4. On July 1, 2008, Marvin Clark, an investor in Durham Inc., obtained a judg *910 ment of $405,000 against the company, and a writ of execution was entered. Consequently, beginning July 8, 2008, Community Bank began returning checks presented for payment on the escrow account for insufficient funds. Although dated in May and June 2008, the checks issued to Quin-co, Mad Dog, Southeastern, and Warren County were not presented to Community Bank for payment until July 2008, when the escrow account had a negative balance; therefore, the four checks were returned for insufficient funds. Durham later obtained a loan for $164,300 and placed this amount into the escrow account on July 28, 2008.
¶ 5. Additionally, on August 1, 2008, Durham received a letter from Citizen’s National Bank stating that it had received a writ of garnishment in regard to the $405,000 judgment and that it had seized funds on two of Durham Inc.’s checking accounts. The following day, August 2, 2008, Durham was holding a public auction for automobiles when the Forrest County Sheriffs Department served a writ of execution and seized the sales proceeds from the auction. On September 3, 2008, a temporary restraining order was issued, which froze all of Durham Inc.’s banking accounts in relation to a federal charge of embezzlement against Durham’s father. Also during this period, the four payees— Quin-co, Mad Dog, Southeastern, and Warren County — tendered the returned checks to the Forrest County District Attorney’s Office for collection. On August 26, 2008 (Southeastern), September 2, 2008 (Warren County), and September 20, 2008 (Quin-Co and Mad Dog), the district attorney sent notices to Durham pursuant to Mississippi Code Annotated section 97-19-57 (Rev.2006), requesting full payment of the amount of the checks within fifteen days. The monies were never paid. Durham Inc. filed Chapter 7 bankruptcy on November 10, 2008, and listed, among others, these four payees as creditors. Durham and his wife also filed Chapter 7 bankruptcy as the couple had borrowed money to invest in the business, using rental property they owned as collateral.
¶ 6. Durham was indicted on October 28, 2008, on five counts of writing worthless checks with a fraudulent intent under Mississippi Code Annotated section 97-19-55(l)(a) (Rev.2006). Count V of the indictment was dismissed prior to trial and is not at issue here. After a jury trial, Durham was convicted on all four remaining counts. The circuit court sentenced Durham to three years on each count; however, the three-year sentence for Count IV was suspended, and three years of post-release supervision was ordered.
¶ 7. On April 6, 2010, Durham filed a motion for a judgment notwithstanding the verdict (JNOV) or, in the alternative, for a new trial, which the circuit court denied. On appeal, we find error in the circuit court’s denial of Durham’s motion for a new trial, and we reverse the court’s judgment and remand this case for further proceedings consistent with this opinion.
I. Whether the evidence was sufficient to support the verdict.
¶ 8. Durham contends that the circuit court erred in denying his motion for a JNOV as the evidence was not sufficient to support his convictions. Specifically, he cites several Mississippi Supreme Court cases that hold section 97-19-55 only applies to contemporaneous exchanges. See Hindman v. State, 378 So.2d 663 (Miss.1980); Pollard v. State, 244 So.2d 729 (Miss.1971); Broadus v. State, 205 Miss. 147, 38 So.2d 692 (1949); Grenada Coco Cola, et al v. Davis, 168 Miss. 826, 151 So. 743 (1934). Durham argues that the bad-check law cannot be applied to checks given to discharge a pre-existing debt, and *911 since the payees “relinquished their property to Durham in reliance up on a consignment arrangement which required Durham to pay them after the auction sale[,] .... the checks were in payment of the pre-existing debts created by the consignment agreement.” Thus, Durham concludes that his convictions violated the constitutional ban on imprisonment for debt under Section 30 of the Mississippi Constitution.[1]
¶ 9. However, as the State notes, section 97-19-55 was revised subsequent to the eases cited by Durham, and the amendments eliminated any distinction between a contemporaneous exchange or payment on a past-due account. Prior to 1983, the statute read that it was unlawful to issue a check “for the purpose of obtaining money, or any article of value, or to obtain services except payment or payments on past due accounts [.]” (Emphasis added). In 1984, the statute was amended to read “for the purpose of obtaining money, services or any article of value, or for the purpose of satisfying a preexisting debt or making a payment or payments on a past due account or accounts [.]” (Emphasis added). In 2002, this emphasized language was deleted entirely. Currently, the pertinent portion of the statute reads:
(1) It shall be unlawful for any person with fraudulent intent:
(a) To make, draw, issue, utter or deliver any check, draft or order to obtain money, delivery of other valuable property, services, the use of property or credit extended by any licensed gaming establishment drawn on any real or fictitious bank, corporation, firm or person, knowing at the time of making, drawing, issuing, uttering or delivering said check, draft or order that the maker or drawer has not sufficient funds in or on deposit with such bank, corporation, firm or person for the payment of such check, draft or order in full, and all other checks, drafts or orders upon such funds then outstanding[.]
Therefore, based on the legislative revisions to the statute removing this distinction, the holdings in the cases cited by Durham are not applicable. Accordingly, there is no merit to this assignment of error.
II. Whether the circuit court erred in denying Durham’s motion for a new trial.
¶ 10. Durham argues that a new trial was warranted as Jury Instruction S-2, which tracked the statutory language of Mississippi Code Annotated section 97-19-57(1), was unconstitutional since it “gave rise to a mandatory inference” of intent and shifted the burden to the defendant to prove his innocence. Section 97-19-57(1) states:
As against the maker or drawer thereof, the making, drawing, issuing, uttering or delivering of a check, draft or order, payment of which is refused by the drawee, shall be prima facie evidence and create a presumption of intent to defraud and of knowledge of insufficient funds in, or on deposit with, such bank, corporation, firm or person, provided such maker or draiver shall not have paid the holder thereof the amount due thereon, together with a service charge of Forty Dollars ($40.00), within fifteen (15) days after receiving notice that such check, draft or order has not been paid by the drawee.
(Emphasis added). Jury Instruction S-2 reads:
*912 The Court instructs the Jury that if you find from the evidence and beyond a reasonable doubt the Defendant did not pay to the holder of the check the amount due together with the service charge, within fifteen (15) days after receiving notice that such check had not been paid by the drawee, then the making, drawing, issuing, uttering or delivering of said check, draft or order, payment of which is refused by the drawee, shall be prima facie evidence and create a presumption of intent to defraud and of knowledge of insufficient funds in, or on deposit with, such bank.
(Emphasis added).
¶ 11. “The standard of review for the grant or denial of a motion for new trial is abuse of discretion.” Rutland v. State, 60 So.3d 137, 142 (¶ 18) (Miss.2011) (citing Irby v. State, 49 So.3d 94, 103 (¶ 27) (Miss.2010)). Under Uniform Rule of Circuit and County Court 10.05, a new trial may be granted by a court “[i]f the court has misdirected the jury in a material matter of law, or has failed to instruct the jury upon all questions of law necessary for their guidance.” URCCC 10.05(6).
¶ 12. Durham objected to the jury instruction at trial, citing Francis v. Franklin, 471 U.S. 307, 313, 105 S.Ct. 1965, 85 L.Ed.2d 344 (1985), for the proposition that “[t]he Due Process Clause of the Fourteenth Amendment .... prohibits the State from using evidentiary presumptions in a jury charge that have the effect of relieving the State of its burden of persuasion beyond a reasonable doubt of every essential element of a crime.” (Citations omitted). In Francis, the United States Supreme Court held: “A mandatory presumption instructs the jury that it must infer the presumed fact if the State proves certain predicate facts. A permissive inference suggests to the jury a possible conclusion to be drawn if the State proves predicate facts, but does not require the jury to draw that conclusion.” Id. at 314.
¶ 13. Prior to Francis, the Supreme Court, in Sandstrom v. Montana, 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979), considered how to view jury instructions that contained such language in order to determine whether the language created a permissible inference or a mandatory presumption. In Sandstrom, the jury instruction read in part: “[T]he law presumes that a person intends the ordinary consequences of his voluntary acts.” Id. at 510, 99 S.Ct. 2450 (emphasis added). The Supreme Court reasoned that the jury might have interpreted the presumption as conclusive or as shifting the burden of persuasion to the defendant; therefore, the instruction was found to be unconstitutional. Id. at 524, 99 S.Ct. 2450. The issue before this Court is whether Jury Instruction S-2 created a mandatory presumption or merely a permissible inference. The State argues the jury instruction does not require the jury to presume any facts; rather, it merely creates a permissible inference. Upon review, we find that Jury Instruction S-2 did create a mandatory presumption.
¶ 14. The only Mississippi case cited by either party discussing the issue of prima facie presumption in a jury instruction is Moore v. State, 205 Miss. 151, 38 So.2d 693 (1949). In that case, the appellant, John Moore, was convicted of violating the Mississippi bad-check law. The jury was given an instruction, in accordance with the statute, which stated that the presentment of a check to a bank upon which it is drawn within thirty days after delivery and having insufficient funds, “is prima facie evidence of intent to defraud the payee thereof of the property for which the check was drawn.” Id. at 163, 38 So.2d at 695. Rather than discussing the issue as a distinction between permissive and mandatory presumptions, the Missis *913 sippi Supreme Court reasoned that “the necessity for resorting to presumptions disappears when there is direct and positive evidence upon the matter in issue.” Id. Therefore, the Moore court found that granting the jury instruction was error, stating:
While the State’s case was for the jury, yet under the record here it was not an unusually strong case[,] and the defendant produced a sufficient defense if believed by the jury. Under the facts here disclosed[,] we feel that it was prejudicial error for the trial court to grant to the State an instruction to the effect that a prima facie presumption may be indulged in by the jury in support of and in addition to the evidence for the State.
Id. at 164, 38 So.2d 696,.
¶ 15. In examining how other jurisdictions have addressed this issue, we find several instances where jury instructions similar to the one before us have been found to be violative of a defendant’s constitutional rights. In State v. Merriweather, 625 S.W.2d 256 (Tenn.1981), the Tennessee Supreme Court considered whether a jury instruction, which tracked the statutory language and contained the statutory presumption under the bad-check law, was constitutional. The Tennessee bad-check statute is nearly identical to Mississippi’s section 97-19-57 — only the time period for notice is different. As the trial judge in Merriweather “made no reference in his instructions to the rebuttable nature of the ‘presumption’ nor did he otherwise instruct the jury how they should read it[,]” the Tennessee Supreme Court found error. Id. at 257. The court concluded that the trial judge should have provided instructions that “include[d] explanations that there is no shifting of the burden of proof to the accused and that the triers of fact are free to draw or not to draw the conclusion of fraudulent intent and knowledge of insufficient funds from proof of (1) dishon- or of the check and (2) failure to pay after receipt of statutory notice.” Id. at 258.
¶ 16. In State v. Johnson, 233 Kan. 981, 666 P.2d 706 (1983), the Kansas Supreme Court reviewed a jury instruction which stated that a defendant’s failure to pay the holder the amount due within seven days “shall be prima facie evidence of intent to defraud and of knowledge of insufficient funds[.]” Id. at 708. Additionally, the instruction stated: “As used in this instruction, ‘prima facie evidence’ is evidence that on its face is true, but may be overcome by evidence to the contrary.” Id. Citing Sandstrom, the appellate court, while upholding the validity of the bad-cheek statutory language, stated that a “jury must be clearly instructed as to the nature and extent of the presumption and that it does not shift the burden of proof to the defendant.”[2] Id. at 711. Finding the trial judge failed to instruct the jury properly, the court reversed and remanded for a new trial. Id; see also State v. LaForge, 347 N.W.2d 247, 253 (Minn.1984) (“ ‘Prima facie’ is a legal term of art that no juror can be expected to understand as meaning anything but a shift in the burden of proof unless the trial judge carefully defines the term.”); State v. Ventre, 910 A.2d 190, 197 (R.I.2006) (A jury instruction describing defendant’s possession of firearm as prima facie evidence of intent “may well have been viewed by one or more of the jurors as being different from other types of evidence and as constituting a mandatory presumption.”).
¶ 17. Jury Instruction S-2 states that if the jury found that Durham had not *914 paid the checks within fifteen days, this fact “shall he prima facie evidence and create a presumption of intent to defraud.” In Miller v. Norvell, 775 F.2d 1572, 1575 (11th Cir.1985), the United States Court of Appeals for the Eleventh Circuit held:
By using the term “shall,” the instructions command the jury to find intent to defraud if the jury finds that funds were not applied directly to the project.... A reasonable juror thus “could have understood” the instructions to require the jury to find intent to defraud, unless the defendant produced evidence to rebut that finding.
In LaForge, 347 N.W.2d at 255, the Minnesota Supreme Court noted: “Under Sandstrom [,] the possibility of such an interpretation is not cured by the other general instructions given or by the use of the permissive ‘may,’ especially in the face of a lack of any further qualification by the trial judge.” (Emphasis added). In the case before us, no explanation of the term “prima facie” was provided to the jury, nor was there any instruction that, regardless of the presumption, the burden of proof remained on the State to prove intent to defraud beyond a reasonable doubt. Accordingly, we find the language in Jury Instruction S-2 created a mandatory presumption, and the circuit judge failed to shift the burden of proof away from the defendant by instructing the jury regarding the “prima facie” inference.
¶ 18. Moreover, the giving of the instruction did not constitute harmless error. A Sandstrom error can be harmless beyond a reasonable doubt if “the faulty instruction applied to an element of the crime not at issue at the trial” or if the “evidence of guilt was ‘overwhelming.’” Miller, 775 F.2d at 1576 (citation omitted). As the United States Supreme Court summarized in Connecticut v. Johnson, 460 U.S. 73, 85-86, 103 S.Ct. 969, 74 L.Ed.2d 823 (1983):
An erroneous presumption on a disputed element of the crime renders irrelevant the evidence on the issue because the jury may have relied upon the presumption rather than upon that evidence. If the jury may have failed to consider evidence of intent, a reviewing couri cannot hold that the error did not contribute to the verdict. The fact that the reviewing court may view the evidence of intent as overwhelming is then simply irrelevant. To allow a reviewing court to perform the jury’s function of evaluating the evidence of intent, when the jury never may have performed that function, would give too much weight to society’s interest in punishing the guilty and too little weight to the method by which decisions of guilt are to be made.
(Emphasis added).
¶ 19. In the present case, the issue of intent was a crucial element of the crime, and there were numerous references made by the State at trial in regard to section 97-19-57(l)’s fifteen-day requirement. The State remarked during its closing arguments:
And the law said — he just instructed you on this. If you don’t pay it within fifteen days, which [Durham] admitted he got the notice, then there’s a prima facie case that you had the intent to defraud. Prima facie — you may assume that. It’s a prima facie case. There’s an assumption.
However, Durham testified that he expected Community Bank to cover his checks as they had done in the past, and he stated: “I in no way when I wrote the checks and they were sent out by Trish for auction proceeds, I in no way knew that we were going to end up with some people who didn’t get paid.” Therefore, the submission of the erroneous jury instruction can *915 not be considered harmless error as Durham’s intent was disputed at trial, and the issue of intent directly affected the verdict.
¶ 20. Accordingly, we find that the circuit court erred in denying Durham’s motion for a new trial. We reverse the judgment of the circuit court and remand for a new trial in accordance with this opinion.
¶ 21. THE JUDGMENT OF THE CIRCUIT COURT OF FORREST COUNTY IS REVERSED, AND THIS CASE IS REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. ALL COSTS OF THIS APPEAL ARE ASSESSED TO FORREST COUNTY.
LEE, C.J., GRIFFIS, P.J., ISHEE, ROBERTS, MAXWELL AND RUSSELL, JJ„ CONCUR. IRVING, P.J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION. CARLTON, J., DISSENTS WITH SEPARATE WRITTEN OPINION. MYERS, J., NOT PARTICIPATING.

. See Miss. Const, art. 3 § 30.

. Durham has not raised the issue of whether the statutory language of Mississippi Code Annotated section 97 — 19—57(l)(a) concerning the presumption of intent is constitutional; therefore, it is not before this Court on appeal.