# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2014-CA-00251-COA

PATRICK HIGGINS A/K/A PATRICK J. HIGGINS A/K/A PATRICK JOSEPH HIGGINS A/K/A PATRICK HIGGINS, SR.                                      APPELLANT

v.

STATE OF MISSISSIPPI                                                         APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 01/24/2014 |
| TRIAL JUDGE: | HON. M. JAMES CHANEY JR. |
| COURT FROM WHICH APPEALED: | WARREN COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | DAVID NEIL MCCARTY |
| | GRAHAM PATRICK CARNER |
| | SAGE EGGER HARLESS |
| ATTORNEY FOR APPELLEE: | ALISON O'NEAL MCMINN |
| NATURE OF THE CASE: | CIVIL - OTHER |
| TRIAL COURT DISPOSITION: | DENIED APPELLANT'S CLAIM FOR COMPENSATION FOR WRONGFUL CONVICTION AND IMPRISONMENT |
| DISPOSITION: | AFFIRMED – 06/07/2016 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE IRVING, P.J., FAIR AND WILSON, JJ.**

**IRVING, P.J., FOR THE COURT:**

¶1.    In December 1994, a Warren County jury found Patrick J. Higgins guilty of three counts of issuing and delivering bad checks. Subsequently, Higgins was sentenced to three years for each count, to run concurrently in the custody of the Mississippi Department of Corrections. However, in 1998, that conviction was reversed and rendered in an unpublished opinion on appeal. *Higgins v. State*, 95-KA-00124-COA (Miss. Ct. App. Mar. 10, 1998). In February 2012, Higgins filed an action under Mississippi Code Annotated section 11-44-1

(Rev. 2012)[1] against the State of Mississippi in the Warren County Circuit Court, wherein he sought compensation for the time that he served in prison because of his criminal conviction. After finding that Higgins could not withstand attacks to his credibility, the trial court ruled in favor of the State. Higgins appeals, asserting that the trial court erred by: (1) applying the statutory presumption of fraudulent intent, and (2) improperly relying on highly prejudicial evidence when weighing his credibility.

¶2.    Finding no error, we affirm.

## FACTS

¶3.    In 1992, Higgins operated and served as the president of Delta Glass Repair Inc. (Delta Glass). On September 16, 1992, Higgins opened a business account for Delta Glass with First National Bank of Vicksburg (FNB). In 1993, Delta Glass, by and through Higgins, began doing business with Southern Lock & Supply (Southern Lock), a wholesale locksmith supply company based out of Pinellas Park, Florida. In August 1993, Higgins, on behalf of Delta Glass, placed a telephone order with Southern Lock. During that transaction, Higgins was assisted by Southern Lock's credit manager, Joan Hart. Following the telephonic order, Southern Lock shipped Higgins's order, in three separate deliveries, via United Parcel

[1] Section 11-44-1 provides, in pertinent part:

> The Legislature finds that innocent persons who have been wrongly convicted of felony crimes and subsequently imprisoned have been uniquely victimized, have distinct problems reentering society, and should be compensated. In light of the particular and substantial horror of being imprisoned for a crime one did not commit, the Legislature intends by enactment of the provisions of this chapter that innocent people who are wrongfully convicted be able to receive monetary compensation.

Service (UPS), with the items being cash-on-delivery (COD) to Higgins's residence in Vicksburg, Mississippi. Because the order was sent in three separate packages and was COD, Delta Glass, by and through Higgins, sent Southern Lock three separate checks. The three checks, dating from August 20 to August 27, 1993, were from Delta Glass's FNB account.[2] However, the business account at FNB was closed by the bank on August 27, 1993, before Delta Glass was able to make good on the checks. UPS forwarded all three of the checks to Southern Lock. Southern Lock attempted to negotiate the checks, but FNB returned them to Southern Lock, marked "account closed."

¶4.    Thereafter, Hart contacted, via telephone, both Higgins and the Warren County District Attorney's Office's Worthless Check Unit in regard to the returned checks. Hart's call to the district attorney's office led to Hart's correspondence with Andrea Hunter, who served as the victims' assistance coordinator and helped develop the Worthless Check Unit.[3] Hunter advised Hart to provide Higgins with a fifteen-day legal notice, pursuant to Mississippi Code Annotated section 97-19-57(1) (Supp. 2015), which required Higgins to pay the full amount of the returned checks within fifteen days of receipt of the notice. Consistent with Hunter's advice, Hart mailed Higgins, via certified mail, three fifteen-day notices—one for each returned check. The notices were mailed to Delta Glass's post-office

---

[2] The checks were for the following amounts: (1) check number 15154, dated August 20, 1993, was made payable in the amount of $434.01; (2) check number 15155, dated August 26, 1993, was made payable in the amount of $1,326.21; and (3) check number 15156, dated August 27, 1993, was made payable in the amount of $1,313.84.

[3] Hunter has since remarried and is now known as Andrea Kitchens. However, throughout this opinion she will be referred to as "Hunter."

3

box, and Hart forwarded copies of the legal notices to Hunter. Following the notices, Hart followed up by speaking with Higgins about the matter via telephone. Thereafter, Higgins sent Hart a $900 cashier's check, which was only sufficient to cover two unrelated and previously dishonored checks from Higgins to Southern Lock. After Hart applied the $900 to the unrelated checks, Hart refunded a leftover balance of $16.82 to Higgins. Hart testified that she did not did not apply the $16.82 to Delta Glass's account because she understood that if Southern Lock accepted the partial payment, then the district attorney's office could not prosecute Higgins. Subsequently, Higgins sought permission to return the items related to the returned checks in lieu of payment, but Southern Lock refused to let him do that as well.

¶5. In February 1994, Hunter initiated talks with Higgins about honoring the checks. However, despite several attempts by both Hunter and Hart, Higgins did not repay the checks. As such, Southern Lock proceeded with criminal charges against Higgins. On April 27, 1994, Hunter issued a warrant for Higgins's arrest. Higgins was indicted for three counts of issuing and delivering the three dishonored checks in violation of Mississippi Code Annotated section 97-19-55 (Supp. 2015). On December 5, 1994, a jury found Higgins guilty of three counts of issuing and delivering bad checks. On December 16, 1994, Higgins was sentenced to three years on each count, with the sentences to run consecutively, resulting in a total of nine years, and a $3,000 fine, which was later suspended by the court. However, on March 10, 1998, this Court reversed and rendered Higgins's convictions, which was followed by a mandate that was issued on August 13, 1998. After serving four years and two

4

months in prison, Higgins was released.

¶6.    On February 22, 2012, Higgins filed a complaint against the State for compensation under section 11-44-1, alleging that he was wrongfully convicted and imprisoned by the State. On December 20, 2012, Higgins filed a motion for partial summary judgment, wherein he sought summary judgment on the issue of his innocence. Within that motion, Higgins claimed that his innocence had been conclusively established by this Court's reversal and rendering of his conviction and that the doctrine of collateral estoppel applied, thereby satisfying Mississippi Code Annotated section 11-44-7 (Rev. 2012). However, on May 3, 2013, the trial court issued an order denying Higgins's motion for partial summary judgment, finding that this Court's reversal and rendering due to insufficient evidence in the criminal trial was not the same thing as proving Higgins's innocence in the civil matter and that, pursuant to section 11-44-7(1)(b), Higgins had failed to prove by a preponderance of the evidence that he did not commit the felonies for which he was sentenced or that the acts or ommissions for which he was sentenced did not constitute felonies. In its order addressing Higgins's motion for partial summary judgment, the trial court also found that collateral estoppel did not apply because the issue of Higgins's actual innocence had never been litigated.

¶7.    On December 18, 2013, the trial court conducted a bench trial where both Higgins and the State put on testimony and evidence. Higgins served as his one and only witness. During his testimony, Higgins claimed that Delta Glass had received $10,000 in payments two weeks prior to him writing the checks, but he stated that he did not know whether that money was

5

placed into Delta Glass's FNB account or not. On January 24, 2014, the trial court entered a judgment in favor of the State, finding that Higgins had not established by a preponderance of the evidence that he did not commit the felonies. This appeal followed.

## STANDARD OF REVIEW

¶8. "When reviewing a judgment from a bench trial, [the appellate court] employs the substantial evidence/manifest error rule." *Estate of Sykes ex rel. Campbell v. Calhoun Health Servs.,* 66 So. 3d 129, 133 (¶14) (Miss. 2011) (internal quotations and citations omitted). The Mississippi Supreme Court has defined "substantial evidence" as "such relevant evidence as reasonable minds might accept as adequate to support a conclusion." *Pub. Emps. Ret. Sys. v. Marquez*, 774 So. 2d 421, 425 (¶13) (Miss. 2000). It is well established that "trial judges enjoy a great deal of discretion as to the relevancy and admissibility of evidence." *Cole v. State,* 126 So. 3d 880, 883 (¶13) (Miss. 2013). In addition, we apply a de novo standard of review when determining issues concerning questions of law. *Starcher v. Byrne*, 687 So. 2d 737, 739 (Miss. 1997).

## DISCUSSION

### I. *Statutory Presumption*

¶9. Higgins argues that the trial court erred by applying the statutory presumption of guilt pursuant to Mississippi Code Annotated section 97-19-57(1) (Rev. 2014). Section 97-19-57(1) reads as follows:

> As against the maker, drawer or payor thereof, the making, drawing, issuing, uttering, delivering, or initiation of a check, draft, order, electronically converted check, or electronic commercial debit payment of which is refused by the drawee, **shall be prima facie evidence and create a presumption of**

6

**intent to defraud and of knowledge of insufficient funds in, or on deposit with, such bank, corporation, firm or person, provided such maker, drawer or payor shall not have paid the holder or payee thereof the amount due thereon, together with a service charge of Forty Dollars ($40.00), within fifteen (15) days** after receiving notice that such check, draft, order, electronically converted check, or electronic commercial debit has not been paid by the drawee or payor's bank.

(Emphasis added). However, we point out that the trial court found that Higgins "intended to defraud" Southern Lock even without applying the presumption. That notion is echoed within the trial court's judgment, wherein it stated:

> [E]ven without the presumption of the statute, this [c]ourt is of the opinion that Higgins intended to defraud Southern Lock not only when he failed to comply with the [fifteen]-day notices, but also when he failed to pay for the goods after he was aware that the checks were dishonored and after he knew the checks he [had] previously issued had been dishonored, and because he has no idea what happened to the $20,000.00[4] in fees his business received the two (2) weeks prior thereto.

Notwithstanding the trial court's explicit findings, Higgins continues to assert that the presumption was erroneously applied. In response, the State maintains that this issue lacks merit, and we agree. However, we address this issue in an effort to clarify his interpretation of the law.

¶10. Higgins argues that presumptions are unconstitutional and that section 97-19-57 serves as an improper shifting of the burden of proof. In support of his argument, he cites a criminal case, *Durham v. State*, 74 So. 3d 908 (Miss. Ct. App. 2011). In *Durham* the defendant was convicted of four felony counts for writing bad checks. *Id.* at 909 (¶1). At

---

[4] We note that this amount is a misstatement. Higgins actually testified that Delta Glass received $10,000 in payments, not $20,000. However, he still could not remember what happened to the payments.

7

trial, Durham testified that he did not have fraudulent intent, which is one of the elements of the crime charged. *Id.* at 914 (¶19). However, the jury was given a jury instruction that closely resembled the language found in section 97-19-57. *Durham*, 74 So. 3d at 911-12 (¶10). The jury instruction at issue stated that if the jury found "from the evidence and beyond a reasonable doubt [that Durham] did not pay to the holder of the check the amount due together with the service charge, within fifteen (15) days after receiving notice . . . , then the making, drawing, issuing, uttering or delivering of said check, draft or order, payment of which is refused by the drawee, shall be prima facie evidence and create a presumption of intent to defraud . . . ." *Id.* at 912 (¶10). On appeal, Durham's conviction was reversed and remanded because the subject jury instruction "created a mandatory presumption or merely a permissible inference." *Id.* at (¶13). We found that the instruction could not be considered harmless because "Durham's intent was disputed at trial, and the issue of intent directly affected the verdict." *Id.* at 915 (¶19).

¶11. Here, the State argues that because it was no longer pursuing a criminal matter against Higgins, it no longer had the burden of proving beyond a reasonable doubt that Higgins committed the crime. Rather, Higgins, who was seeking recovery from the State, had the burden of proving by a preponderance of the evidence that he did not commit the felonies for which he was charged, convicted, and sentenced. Accordingly, the State argues that Higgins did not prove his actual innocence and, therefore, is not entitled to judgment in his favor.

¶12. As mentioned above, at trial, Higgins served as his only witness and the only party before the trial judge providing credibility for his recitation of events. However, the State

8

put on four witnesses in opposition to Higgins's testimony. Although Higgins claims that he had no knowledge of whether Delta Glass's FNB checking account had sufficient funds to cover the amount, he stated that he handled ninety-five percent of the business, that "[he] was the boss," and that "the buck stop[ped] with [him]." He also testified that he did not know how much was in the account because he was "too busy" to balance the checkbook. In addition, as previously mentioned, Higgins testified that Delta Glass received payments totaling $10,000 during the two weeks prior to him writing the three checks, yet he did not know whether those payments were deposited into the business account or not. Higgins further testified that he did not remember whether he received the fifteen-day notices. However, he did admit that the physical and post-office-box numbers on the notices were correct. In addition, the certified-mail receipt, dated September 23, 1993, had the correct post-office box for Delta Glass, and, although it is unknown who signed it, the receipt was signed. Higgins went on to state that he only gave keys to the post-office box to people that he trusted, so he had no reason to believe anyone would have signed for the envelope and not given it to him.

¶13. We agree with the State's position. We note that, despite Higgins's argument that *Durham* rested on intent and its interplay with section 97-19-57, *Durham* actually establishes the position that a jury instruction is unconstitutional when it improperly shifts the burden of proof in a criminal trial. However, that was because *Durham* was a criminal case, and, in criminal proceedings, there may not be any presumptions that excuse the State from its burden of proving every element of the crime beyond a reasonable doubt. The matter

9

currently before us is a civil matter. More specifically, this matter is governed by

Mississippi's statute providing for compensation to victims of wrongful conviction and

imprisonment, section 11-44-1, and the burden of proof resides with Higgins, not the State.

The prerequisites for a claim of wrongful conviction and imprisonment under section 11-44-1

are set out in Mississippi Code Annotated section 11-44-3 (Rev. 2012).[5] In addition, we

[5] Section 11-44-3 reads:

(1) In order to present an actionable claim for wrongful conviction and imprisonment under this chapter, a claimant must establish by documentary evidence that:

(a) The claimant has been convicted of one or more felonies and subsequently sentenced to a term of imprisonment and has served all or any part of the sentence;

(b) On grounds not inconsistent with innocence:

(i) The claimant was pardoned for the felony or felonies for which sentenced and which are the grounds for the complaint and the pardon is based on the innocence of the claimant which must be affirmatively stated in the pardon; or

(ii) The judgment of conviction was vacated and/or reversed;

(c) If there was a vacatur or reversal, either the accusatory instrument was dismissed or nol prossed; or if a new trial was held, the defendant was found not guilty;

(d) The claimant's claim is not time-barred by the provisions of this chapter; and

(e) The claimant did not intentionally waive any appellate or post-conviction remedy otherwise available in order to benefit under this chapter.

note:

> If a claimant establishes a claim under section 11-44-3, he must then meet the burden of proof under . . . section 11-44-7(1) . . . . If a claimant meets this burden, he or she is entitled to "Fifty Thousand Dollars ($50,000.00) for each year of incarceration regardless of the number of felonies for which a claimant was convicted" and reasonable attorney's fees.

*Jefferson v. State,* 95 So. 3d 709, 711 (¶4) (Miss. Ct. App. 2012). However, section 11-44-7(1)(b) states that a claimant must prove by a preponderance of the evidence that "[h]e did not commit the felony or felonies for which he was sentenced and which are the grounds for the complaint . . . ." Our supreme court has defined preponderance of the evidence as "evidence more convincing to the [trier of fact] as worthy of belief than that in opposition thereto, or such evidence as, when weighed with that opposed to it, has more convincing force." *Gregory v. Williams,* 203 Miss. 455, 469, 35 So. 2d 451, 453 (1948).

¶14.    Here, the trial court noted, twice, that there is a stark contrast between being innocent until proven guilty in a criminal trial and having to prove your innocence in a civil trial, noting that proving innocence by a preponderance of the evidence is a far more difficult task than establishing reasonable doubt. In *Hymes v. State,* 121 So. 3d 938, 943 (¶13) (Miss. Ct. App. 2013), this Court held:

> In a criminal trial, the individual that the State has accused of wrongdoing is entitled to a presumption of innocence until the State proves his guilt beyond a reasonable doubt. Thus, Hymes, during his criminal trial, was entitled to the

---

(2) The claim shall be verified by the claimant.

(3) If the court finds after reading the claim that the claimant has not demonstrated the foregoing, it shall dismiss the claim, either on its own motion or on the state's motion. This dismissal shall be without prejudice to allow adequate refiling within ninety (90) days.

presumption of innocence until the State proved beyond a reasonable doubt each element of the offense charged. . . . [I]n his trial for compensation, which is civil in nature, Hymes was no longer entitled to that presumption. During the civil trial, it was Hymes's burden to prove his innocence by a preponderance of the evidence. Allowing Hymes to retain the presumption of innocence throughout his civil trial would absolve him from proving an essential element of his claim against the State—his innocence.

(Internal citations and quotation marks omitted). As such, it was Higgins's duty to disprove every element of the crime for which he was charged and convicted. Higgins had the burden of producing credible evidence to (1) establish that he did not intend to defraud Southern Lock and (2) rebut the presumption that his failure to pay the dishonored checks after receipt of the fifteen-day notices evidenced his intent to defraud.

¶15. We find that despite being given ample opportunity to prove his innocence, Higgins failed to do so. As such, he was unable to rebut the properly applied statutory presumption. This issue is without merit.

## II. Factual and Evidentiary Rulings

¶16. Higgins also argues that the trial court erred by considering highly prejudicial evidence when weighing his credibility. More specifically, Higgins argues that it was error for the trial court to admit evidence that Higgins had pleaded guilty to theft by deception in 2011. Higgins contends that the State was allowed to introduce evidence of other bad acts "in order to show that [Higgins] acted in conformity therewith." Higgins also contends that the trial court's reliance on such evidence constitutes reversible error. And Higgins argues that the trial court relied on evidence that was not in line with the evidence produced at the civil trial. More specifically, Higgins contends that the trial court erred by repeatedly

12

referring to the payments made to Delta Glass, prior to the checks being signed, as $20,000, rather than $10,000, the actual amount that Higgins testified to. Higgins also contends that the trial court erred in noting that, during his criminal trial, Higgins had pointed the finger at his wife by alleging that she had signed the checks in order to obtain a divorce, suggesting that he did so because he knew that she could not be called due to spousal immunity. In support, Higgins alleges that the only evidence that he had made such a claim resided in a handwritten letter, which was not admitted into evidence due to his counsel's objections, and that the trial court had relied on that letter when making its finding.

¶17.    In response, the State argues that there was substantial evidence, on the record, to support the trial court's finding that Higgins was not a credible witness, and, therefore, not entitled to compensation under section 11-44-1. The State acknowledges that the trial court incorrectly stated the amount of money that Higgins alleged Delta Glass received, via payments, during the two weeks prior to the subject checks being made out, but the State contends that the trial court's inaccurate recitation of the amount did not prejudice Higgins. In addition, the State argues that it is debatable whether the trial court relied on the handwritten letter, and, regardless of if it did, there was still sufficient evidence in the record to support the trial court's findings.

### A.    Prior Conviction

¶18.    As to Higgins's argument that the trial court erred by allowing testimony on the fact that he pleaded guilty to theft by deception in 2011, which pertained to him obtaining approximately $19,000 in disability, workers' compensation, and unemployment benefits,

13

Higgins contends that the trial court relied on this evidence to determine that he "acted in conformity therewith," in violation of Rule 404(b) of the Mississippi Rules of Evidence. In response, the State argues that the information was properly introduced under Rule 609 of the Mississippi Rules of Evidence.

¶19. When determining both the credibility of a witness and the weight of the witness's testimony, it is well settled that

> [i]t is the function of the [fact-finder] to pass upon the credibility of the evidence. . . . [T]he strength or weakness of testimony is not measured by the number of witnesses. [T]he [fact-finder] may accept the testimony of some witnesses and reject that of others, and may accept in part and reject in part the testimony of any witnesses, or may believe part of the evidence on behalf of the [S]tate and part of that for the accused, and the credibility of such witnesses is not for the reviewing court, but only for the [fact-finder].

*Groseclose v. State*, 440 So. 2d 297, 300-01 (Miss. 1983) (internal citations omitted). When the trial judge serves as the fact-finder, he has the sole authority to determine a witness's credibility. *Bell v. Parker*, 563 So. 2d 594, 597 (Miss. 1990).

¶20. Rule 609(a)(2) states that "evidence that any witness has been convicted of a crime shall be admitted if it involved dishonesty or false statement, regardless of punishment," to attack a witness's character for truthfulness. As such, Higgins's prior theft-by-deception conviction was not used to show that he had acted in conformity therewith, as Higgins argues; rather, it was introduced as a way of diminishing his credibility as a witness.

¶21. Once the State put on evidence of Higgins's past dishonesty, it was well within the trial judge's discretion as fact-finder to determine Higgins's credibility. With that in mind, the trial court noted in its order that it had to weigh the testimony of both Higgins, who stood

14

to gain six figures and was facing a separate, unrelated conviction, and the State's four witnesses—all having nothing to gain from testifying at the civil trial some twenty years after the criminal trial. Based on the testimony and evidence presented, the trial court, after drawing all reasonable inferences and weighing the credibility of the witnesses, concluded that Higgins did, in fact, receive the fifteen-day notices and that he failed to act upon them in a timely manner. As such, the trial court found that Higgins's failure to timely respond served as prima facie evidence of his intent to defraud and that Higgins failed to overcome that presumption. In addition, the trial court found that Higgins also intended to defraud Southern Lock when he failed to pay for the goods even after he was made aware of the returned checks through correspondence with Hart.

¶22. We cannot find that the trial court abused its discretion in allowing the State to introduce evidence regarding the 2011 conviction in the State's efforts to attack Higgins's credibility. This issue is without merit.

### B. Trial Court's Misstatement Regarding Payment Amount

¶23. We now turn to Higgins's assertion as to the trial court's misquote regarding the amount of money that Delta Glass received prior to Higgins writing the three checks. While the trial court did incorrectly quote Higgins's testimony regarding the money that he alleged Delta Glass received in payments from August 15-22, 1993, this misstatement was slight in nature and did not prejudice Higgins. In addition, we again reiterate that because this case is centered around whether Higgins actually committed the felony for which he was charged, convicted, and served time, this case hinges on Higgins's credibility. However, as previously

15

stated, Higgins only offered his own self-serving testimony. There is no need for a recitation of the relevant parts of his testimony because they have been discussed in the previous issue. However, we expound on the previously provided information by mentioning that there is no evidence that any of the money that Higgins claims Delta Glass received was ever deposited into the FNB account or as to why the business account was closed for being overdrafted by $1,564.68. In addition, as previously mentioned, Higgins testified that he could not remember what happened to the $10,000. In making its ruling, it is clear that the trial court relied on Higgins's lack of corroborated testimony and failure to remember key details, not the amount of the money. As such, the trial court's misstatement of $20,000 instead of $10,000 is harmless error. This issue is without merit.

### C. Handwritten Letter

¶24. As to Higgins's contention that the trial court erred in determining his credibility because (1) it noted in its opinion and order that he pointed the finger at his wife by alleging that she had signed the checks in order to obtain a divorce and (2) its only source for that information was a handwritten letter that was not admitted into evidence during his criminal trial, we agree with the State's position, arguing that it is debatable whether the trial court relied on the handwritten letter and that there was sufficient evidence in the record to support the trial court's findings. More specifically, we note that the only reference that the trial court made about Higgins's wife in its opinion and order was as follows: "Moreover, during the criminal trial, Higgins pointed the finger at his wife, knowing the State could not call her to testify, claiming she signed the checks in order to procure a divorce." That statement

alone is not enough to establish that the trial court relied solely on that bit of information in determining Higgins's credibility or that it was even a major part of the trial court's decision making. This issue is without merit. Accordingly, we affirm the trial court's judgment.

¶25. **THE JUDGMENT OF THE WARREN COUNTY CIRCUIT COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.**

**LEE, C.J., GRIFFIS, P.J., ISHEE, CARLTON, FAIR, WILSON AND GREENLEE, JJ., CONCUR. BARNES AND JAMES, JJ., NOT PARTICIPATING.**